IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA,

      Plaintiff,

v.              CIVIL ACTION NO.  2:08-cv-01158

EZRA LAMBERT, et al.,

      Defendants.

**MEMORANDUM OPINION & ORDER**

Pending before the court are the plaintiff National Union Fire Insurance Company of Pittsburg, PA's ("National Union") Motion for Summary Judgment [Docket 64] and defendant Betty Jean Hale's Motion for Summary Judgment [Docket 66]. For the reasons explained below, National Union's motion is **DENIED**, and Ms. Hale's motion is **GRANTED**.

**I. Background**

National Union brings this declaratory judgment action in response to a lawsuit filed by Betty Jean Hale in the Circuit Court of Logan County, West Virginia. (Compl. [Docket 1], Attach. 3.) Ms. Hale alleges that she was severely injured while working as an employee of Aramark Correctional Services ("Aramark") in the kitchen area at West Virginia's Southwestern Regional Jail. According to Ms. Hale, a mixer fell off a cart and crushed her foot. Inmate Ezra Lambert, who also worked in the kitchen area, had allegedly continued to push the cart after the wheel got stuck in a crack in the floor, causing the mixer to fall.

Ms. Hale brought an action against the West Virginia Department of Military Affairs and Public Safety and the West Virginia Regional Jail and Correctional Facility Authority (collectively, the "State"); Mr. Lambert; and Aramark Correctional Services. She asserts that Mr. Lambert was employed by the State, and acted as an agent of the State, at the time of her injury. (*Id.* ¶¶ 9-10.)

The instant case concerns insurance coverage issued by National Union to the State of West Virginia, as the named insured.[1] National Union seeks a declaration that it has no duty to defend or indemnify Mr. Lambert under the policy with regard to Ms. Hale's suit. "Coverage A" of the West Virginia Comprehensive Liability Coverage Form ("the policy") provides that National Union "will pay on behalf of the 'insured' all sums which the 'insured' shall become legally obligated to pay as damages because of 'bodily injury'. . . to which this insurance applies." (Compl., Attach. 2.) "Persons Insured" includes any "employee" or "volunteer worker" of the named insured "while acting within the scope of their duties as such," although "the insurance afforded such individuals does not apply to 'bodily injury' to another . . . employee [or] volunteer worker" of the named insured "arising out of or in the course of his employment." (*Id.*)

The dispute between the parties centers on whether Mr. Lambert qualifies as a covered "volunteer worker" of the State under the policy.

**II. Standard of Review**

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

---

[1] "Endorsement #1" of the policy states: "It is agreed that the 'the State of West Virginia' means: The Legislative, Judicial and Executive Branches of the State of West Virginia, including all its Boards, Commissions, Councils, Authorities, Institutions, Universities, Colleges, Schools, Departments, Divisions, and Agencies . . . ." (Compl., Attach. 2.)

P. 56(c).  Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion.  *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).

**III.  Analysis**

The policy does not define the term "volunteer worker."[2]  But when an insurance policy's provisions are "clear and unambiguous, . . . full effect will be given to the plain meaning intended." *Keffer v. Prudential Ins. Co.*, 172 S.E.2d 714, 715 (W. Va. 1970).

Mr. Lambert qualifies as a "volunteer worker" under any reasonable definition of the term. Certainly, some aspects of his work environment were coercive.  He testified that he understood he was "going to have to work in the jail." (Pl.'s Mot. Summ. J., Attach. 1, at 83.)  When he quit work one day, he was written up and placed in lockdown for five days.  (*Id.* at 77-80.)  National Union

---

[2] Other policies have defined "volunteer worker" as a person who is not the employee of the insured; who "donates his or her work"; who acts at the direction of the insured and within the scope of duties determined by the insured; and who is not "paid a fee, salary or other compensation" by the insured or anyone else for the work performed for the insured.  *See Millette v. DEK Techs., Inc.*, 2009 WL 3488692, *2 (S. D. Fla. Oct. 22, 2009); *Nautilus Ins. Co. v. S & S Indus. Servs., Inc.*, 2007 WL 951776, *2-3 (S.D. Fla. March 28, 2007); *Hastings Mut. Ins. Co. v. LaFollette*, 2009 WL 348769, *1 (S.D. Ind. Feb. 6, 2009); *Scottsdale Ins. Co. v. O'Leary*, 2007 WL 2703161, *1 (N.D. Okla. Sept. 13, 2007).

argues that Mr. Lambert's work in the kitchen entailed a high degree of coercion that is inconsistent with the meaning of the term "volunteer."

Yet Mr. Lambert chose to work for the State without compensation. It is undisputed that Mr. Lambert received no financial benefits for his work in the kitchen. He worked six days a week for eight hours a day, preparing breakfast and lunch. (Def.'s Mot. Summ. J., Attach. 5, at 33, 35.) He usually worked with two other inmates, under the supervision of an Aramark employee. (*Id.* at 36.) He was trained by other inmates. (*Id.*, Attach. 7, at 50.) His reasons for wanting to work in the kitchen were, in his words, "[t]o eat extra food and to get out of [his] cell." (*Id.*, Attach. 4, at 46.) Accordingly, he completed a request form, and was later interviewed for the job in the kitchen. (*Id.* at 45, 47.) Mr. Lambert testified that he did not consider himself employed, and considered himself a volunteer. (*Id.* at 47; Pl.'s Mot. Summ. J., Attach. 1, at 83.) He has testified that he was not required to work in the kitchen, and that no one at the jail told him he had to do so. (Def.'s Mot. Summ. J., Attach. 4, at 47.)

Mr. Lambert's testimony about the application process for his job, and his reasons for wanting to work, show that the decision to work was ultimately his. He qualifies as an insured "volunteer worker" under the plain meaning of the policy, and is therefore entitled to indemnification under the policy.

National Union further contends that Mr. Lambert is not insured because inmates are traditionally excluded from liability policies, since "[a] jail authority does not have the same level of control over who it accepts onto its grounds" as an ordinary employer has, "and thus the risk posed by those individuals for purposes of a liability policy would not ordinarily be contemplated by the insured or insurer." (Mem. Supp. Mot. Summ. J. [Docket 65] 13.) National Union's

contentions lack merit. Policy language that could have the effect of excluding an insured from coverage must be strictly construed against the insurer. *Riffe v. Home Finders Assocs., Inc.*, 517 S.E.2d 313, 319 (W. Va. 1999). National Union could have predicted that the State might be held accountable for the actions of Mr. Lambert and other similarly situated inmates. The jail authority has control over which inmates it accepts into its work programs, and how they are supervised. National Union could have explicitly excluded inmates from its insurance coverage, yet the broad, general language of the policy extends coverage to such persons.

## IV. Conclusion

For the reasons explained above, National Union's Motion for Summary Judgment [Docket 64] is **DENIED** and Ms. Hale's Motion for Summary Judgment [Docket 66] is **GRANTED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                                                          ENTER:      April 19, 2010

                                                      */s/ Joseph R. Goodwin*
                                                      Joseph R. Goodwin, Chief Judge